## Case No. 8,979.

### The MAITLAND.

[2 Biss. 201;[1] 2 Chi. Leg. News, 113; 17 Pittsb. Leg. J. 18.]

District Court, D. Wisconsin. Dec. Term, 1869.

MARITIME LIENS—REPAIRS—CONTRACT OF OWNER —CLAIM OF LIEN.

1. Repairs upon a vessel in winter quarters in a foreign port, done by contract with the owner, there being no express claim at the time of a lien upon the vessel, and no immediate necessity for such repairs, do not constitute a maritime lien.

2. The power of the owner and master in binding the vessel considered.

3. Various cases distinguished and commented upon.

In admiralty.

Libel for repairs [by William H. Wolf and others against the schooner Maitland]. It is alleged in the libel that on the 15th of February, 1869, while this vessel was at the port of Milwaukee, her owner or agent represented to libellants that she stood in need of repairs in

order to make her sea-worthy, and competent to proceed on her intended voyage, and requested them to furnish such materials and supplies; they were supplied by libellants on the credit of the vessel, the said owner or agent not having either money or credit to purchase said materials and supplies, which were suitable, proper and necessary to enable the vessel to depart in safety upon her intended voyage; [and the value thereof is, by maritime law, a lien upon said vessel, her boats, tackle, apparel and furniture, and that a balance of $1,474.71 remains unpaid, although these libellants have often requested the said owner or agent to pay the same.][2] The vessel's home port was Buffalo. John H. Moore, of Buffalo, claimed the vessel, as owner, subject to a mortgage of $10,000, the mortgagee having power to take possession of her at any time. He alleges that before the time the repairs were done by libellants, the vessel had been stripped, and was laid up in winter quarters in the port of Milwaukee, without any intention or possibility of her being employed until navigation should open in the ensuing spring; that after the close of navigation in the fall of 1868, and after the vessel was laid up in winter quarters, claimant, believing that certain repairs would improve her condition for the next season of navigation, and raise her rate, entered into correspondence with libellants as to the price of such repairs, and in January, 1869, received from libellants a proposition in writing to make such repairs. The proposal was required to be accepted by claimant within ten days. Claimant answered in writing: "I accept your offer, and will give five hundred and fifty dollars to do the following work on barque Maitland," (describing the work to be done, &c.) Claimant denied that the repairs were made on the credit of the vessel alone, as propounded in the libel, or that they were necessary to enable her to proceed on her voyage; and he alleged that they were furnished by libellants on his own credit, and that he had money and credit to procure the same. [He denies that the repairs were necessary to enable the vessel to depart in safety upon her intended voyage, and alleges that she could have been employed in navigation with safety during the ensuing season without repairs, and that such repairs were made not for the purpose of rendering the vessel seaworthy or safe for navigation, but to put her in better condition and in a higher class.][2]

Emmons & Van Dyke, for libellants.

Finches, Lynde & Miller, for respondents.

MILLER, District Judge. As the issue here raised is one of admiralty jurisdiction, I omit all reference to the portions of the answer and evidence, which relate to the amount of the bill of repairs and the manner of the work.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [From 17 Pittsb. Leg. J. 18.]

Further correspondence took place between these parties in the month of January, 1869, respecting additional repairs to the vessel. In a letter of January 23d claimant wrote to libellants: "Enclosed please find my acceptance of your proposition. I understand you make no objection to my former terms, and suppose you accept them, as you say nothing to the contrary. But I don't expect to keep you out of the pay any longer than you wish to. I will not be able to go up now, and will depend on your doing me a good job. I shall ask Mr. Vance to step around and consult when you get the deck off. Please take care of the ropes in the hold. The other work to be done may remain until the captain goes up, except such of the beams as need repairing."

In a letter dated Buffalo, July 16, 1869, claimant wrote to libellants: "Your valued favor of the 13th inst. is received, which is accepted." He then directs as to the work, and then proceeds: "You will have to take acceptances, or some way wait for pay until the vessel makes one trip, unless I can conveniently pay you. I have money that is promised, ample, but I may be disappointed, yet I hope not; but I will strain every point to pay you when you want it. But should I not be able to collect, then I will want the time." Libellants then did the work on the vessel in the port of Milwaukee.

By rule No. 12 of practice in admiralty and maritime jurisdiction it is provided that, "in all suits by material men for supplies, or repairs, or other necessaries, for a foreign ship, or a ship in a foreign port, the libellants may proceed against the ship and freight in rem, or against the master or owner alone in personam. The home port of this vessel being Buffalo, she was foreign, in the sense of this rule, to the port of Milwaukee.

The season of navigation being ended, the vessel was laid up at Milwaukee for the winter. The repairs may have been necessary for putting the vessel in a sea-worthy condition, as a grain-bearing vessel, for the ensuing season. The vessel was not then on a voyage, bearing a cargo, or intending at the time to proceed on a voyage, or trip from Milwaukee to Buffalo or any other port. There was no intention of putting her in employment before the opening of navigation the ensuing spring. Present necessity for the repairs did not exist when ordered or when made. The master did not order the repairs from pressing necessity, nor did he order them at all, but the owner, and that, too, at a time when the vessel was not actually in employment. She might probably as well have been returned to her home port and repaired there as in the port of Milwaukee.

The rule of the admiralty is of ancient date, that a master of a vessel has power to create a lien for repairs and supplies obtained in a foreign port in a case of necessity. The case of Thomas v. Osborn, 19 How. [60 U. S.] 22, and the cases cited in the opinion conclusively establish this rule, without further references. And this power of the master extends to a case where he is charterer and special owner pro hac vice. Here the master is entirely unknown to the libellants as such. The whole negotiation and contracts were between the owner and the libellants. The master had returned to his home in Buffalo before the repairs were contracted for or performed. In the case of Pratt v. Reed, 19 How. [60 U. S.] 359, the steamboat Sultana was owned in Buffalo and employed in trade between that port and other ports of the upper lakes. She was supplied with coal from time to time at the port of Erie, her owner being the master, and present; and of such ownership, Reed, the libellant, had knowledge when he supplied the coal. There was no representation of the necessity of the supplies, other than that they were directed by the master at the times when furnished. When the owner was not present the coal was furnished at the request of the person in command. The bill rendered by the libellant contained a running account of debit and credit through a period of nearly two years, and there did not appear to be any doubt of the necessity of the supplies when furnished.

The court considered it essential for libellant to prove not merely a necessity for the supplies, but also a necessity at the time of procuring them, for a credit upon the vessel. This proof is as essential as that of the necessity of the article itself. The court says: "The supplies having been furnished at a fixed place, according to the account current, and apparently under some general understanding and arrangement, the presumption is that there could be no necessity for the implied hypothecation of the vessel; there could be no unexpected or unforeseen exigency to require it. For aught that appears, the supplies could have been procured on the personal credit of the master, and in this more especially as he was the owner. We do not say that the mere fact of the master being owner, of itself excludes the possibility of a case of necessity that would justify an implied hypothecation; but it is undoubtedly a circumstance that should be attended to in ascertaining whether any such necessity existed in the particular case. The Sophie, 1 W. Rob. Adm. 309. It must appear that the supplies could only be procured on the credit of the vessel." The same position is reiterated by Justice Nelson, who wrote the opinion in one of the above cases and approved the other, in The James Guy [Case No. 7,196], where it is decided, "to sustain a libel in rem against a vessel owned in New York for repairs done upon her at Baltimore, at the instance of the master, the necessity of the repairs, and for a lien upon the vessel to enable the master to procure them, must be shown." And the court says that, "the necessity for the repairs and for the lien

must depend upon the facts and circumstances of the case."

In the case of The Neversink [Case No. 10,-133], the court again declares that in the cases of Thomas v. Osborn, 19 How. [60 U. S.] 22, and Pratt v. Reed [supra], the rule which requires evidence of an apparent necessity existing at the time for supplying on the credit of a vessel, supplies furnished to her in a foreign port in order to create a lien upon her in favor of a material-man, was not extended beyond its ancient strictness as to the degree of proof required. And in that case it is decided that where the master of a steamer has no funds to pay for coal, and her charterers who owned her pro hac vice resided in a foreign jurisdiction, and the coal was a necessary supply, and it was obtained by the master, and credit was in fact given to the vessel and her charterers; it was held that a lien was given on the vessel.

It was also held that when the material-man resided at the home port of the vessel, and furnished coal at a foreign port, through an agent there, the supplies were considered as furnished by the agent at the foreign port, the same as if the principal resided there.

It evidently is the duty of material-men furnishing supplies at foreign ports to vessels, at the instance of the master, who is agent of the owner, to ascertain the necessity of the supplies and also of the inability of the master or owners of the vessel to pay for them, before the vessel can be subjected to a maritime lien. Such, also, is the duty of material-men in dealing directly with the owners of a vessel, as in this case. It does not appear that libellants required direct hypothecation of the vessel, or that such was agreed upon or promised by the owner. Nor does it appear that the libellants made inquiry into incumbrances on the vessel, or questioned the pecuniary ability of the owner. The supplies were furnished at the instance and on the credit of the owner, without the aid of any facts upon which a presumption can arise of a legal hypothecation of the vessel.

In the case of The St. Lawrence, 1 Black [66 U. S.] 522, the evidence showed that the supplies being furnished, the amount and value being ascertained to the satisfaction of claimant's proctor, the owner of the vessel at the time gave his notes for the amount of the libellants' demand, under the express stipulation between him and libellants that their lien against the vessel should not be discharged or released unless the notes were paid. The notes were afterwards surrendered. It was held that the lien was not waived by the acceptance of the notes. That was an express hypothecation of the vessel. In the case in hand, the owner accepts the proposal of libellants to furnish supplies, and promised individually to pay a certain price, and again he agrees personally for additional repairs, libellants not at any time claiming a lien upon the vessel, even after

notice from claimant that they might not be paid when the repairs were completed, but at a subsequent time.

It is contended that this libel should be sustained by reason of the remark of the justice in delivering the opinion in the case of The Belfast, 7 Wall. [74 U. S.] 624, that "material-men who furnish materials or supplies for a vessel in a foreign port, or in a port other than in the state where the vessel belongs, have a maritime lien on the vessel as a security for the payment of the price of all such materials and supplies. They have such a lien, because, upon the principles of the maritime law, such materials and supplies are presumed to be furnished on the credit of the vessel," referring to cases anterior to those cited above. This remark of the judge in an opinion in a case involving the question of exclusive jurisdiction of the district courts on libels on contracts of affreightment, and not in any manner touching the lien of material-men for supplies, cannot be taken to overrule the cases of Thomas v. Osborn and Pratt v. Reed [supra].

The court cannot step aside from the contract between the parties, because it appears in the answer of the claimant that the vessel is incumbered by a mortgage to the amount of $10,000. The claimant, for aught we know, may be abundantly able to pay all that libellants can or may recover, irrespective of his interest in the vessel. The fact of the mortgage is no evidence of his inability to pay this debt. Libellants should have satisfied themselves of claimant's pecuniary circumstances before furnishing the supplies and making the repairs, and if they had doubt of his ability to meet his contract, they should have required a lien upon the vessel, or notified him that the supplies would only be furnished on the credit of the vessel. I am satisfied that libellants have no maritime lien on the vessel, and that the libel must be dismissed.

NOTE. For a full discussion of liens for repairs, see 2 Pars. Shipp. & Adm. and authorities there cited. Consult The Eclipse [Case No. 4,268], 1871, and The Selt [Id. 12,649], 1872, and cases there cited. Also The Lady Franklin [Id. 7,982]; The Celestine [Id. 2,541]. For a discussion of the lien of material-men under the maritime and state law, and the jurisdiction of the admiralty courts, especially since the amendment of May 6, 1872, to the 12th rule in admiralty, examine two recent decisions for May, 1873. The Cicassian [Id. 2,720a]; In re Kirkland [Id. 7,842].